## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

ADRIAN GARCIA RANGEL,    )
    )
Plaintiff,    )
    )
vs.    )    CAUSE NO. 2:09-CV-071
    )
THOMAS SCHMIDT, *et al.*,    )
    )
Defendants.    )

## OPINION AND ORDER

This matter is before the Court on the: (1) Defendants' Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church's Motion for Summary Judgment, filed by Defendants, Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of the Wesleyan Church, on March 18, 2011 (DE #331); (2) Defendants, Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church Motion to Strike Portions of the Affidavit of Adrian Garcia Rangel, filed by Defendants, Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of the Wesleyan Church, on April 15, 2011 (DE #345); (3) Motion for Permission to Exceed Page Limit in Plaintiff's Memorandum of Law Response to Defendant's Motion for Summary Judgment, filed by pro se Plaintiff, Adrian Garcia Rangel, on April 19, 2011 (DE #352); (4) Motion to Strike Exhibit B of DE 349 - Defendants Thomas Schmidt's, Denise Schmidt's and the Northern Michigan District of

the Wesleyan Church's Supplemental Designation of Evidence, filed by pro se Plaintiff, Adrian Garcia Rangel, on April 19, 2011 (DE #355); (5) Defendants, Thomas Schmidt, Denise Schmidt, and The Northern Michigan District of The Wesleyan Church Motion to Strike Portions of The Clarified Affidavit of Adrian Garcia Rangel, filed by Defendants, Thomas Schmidt, Denise Schmidt, and The Northern Michigan District of The Wesleyan Church, on April 26, 2011 (DE #358); (6) Motion for Psychiatric Evaluation of Defendant Thomas Schmidt for Competency to Stand Trial, filed pro se Plaintiff, Adrian Garcia Rangel, on April 28, 2011 (DE #360); (7) Motion for Psychiatric Evaluation of Defendant Denise Schmidt for Competency to Stand Trial, filed pro se Plaintiff, Adrian Garcia Rangel, on April 28, 2011 (DE #361); (8) Motion for Psychiatric Evaluation of Witness Janell Schmidt Rangel for Competency to Stand Trial, filed by pro se Plaintiff, Adrian Garcia Rangel, on May 9, 2011 (DE #372); (9) Motion Requesting That Defendants Thomas Schmidt, Denise Schmidt, Witness Janell Schmidt Rangel, Candace Baumgartner, James H. McCormick be Investigated for Criminal Conspiracy to Violate Civil Rights, Perjury and Suborning Perjury in Retaliation for Plaintiff's Exercising his Civil Right in Bringing This Case Before The United States District Court, filed pro se Plaintiff, Adrian Garcia Rangel, on May 12, 2011 (DE #374); (10) Motion for Appointment of Special Prosecutor, filed by pro se Plaintiff, Adrian Garcia Rangel, on June 3, 2011 (DE #383); (11) Motion to

Strike DE 381, filed by pro se Plaintiff, Adrian Garcia Rangel, on June 3, 2011 (DE #384); (12) Motion to Strike DE 381, filed by pro se Plaintiff, Adrian Garcia Rangel, on June 3, 2011 (DE #385); (13) Motion for Contempt of Court Against Thomas Schmidt, Denise Schmidt and the Northern Michigan District of The Wesleyan Church Corporation, filed by pro se Plaintiff, Adrian Garcia Rangel, on June 9, 2011 (DE #387); and (14) Motion for Appointment of Special Prosecutor (2) re DE 374, filed by pro se Plaintiff, Adrian Garcia Rangel, on June 9, 2011 (DE #388).

As explained in more further detail below, it is **HEREBY ORDERED**: (1) Defendants' Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church's Motion for Summary Judgment (DE #331) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants, Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church. (2) Defendants' Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church's Motion to Strike Portions of the Affidavit of Adrian Garcia Rangel (DE #345) is **GRANTED** and the Clerk is **ORDERED** to Strike paragraphs 21-33 and 39-41 of Plaintiff's Affidavit (DE #340-1) submitted as part of his response in opposition to the motion for summary judgment. (3) Plaintiff's Motion for Permission to Exceed Page Limit for his response (DE #352) is **GRANTED**. (4) Plaintiff's Motion to Strike Exhibit B of DE 349 (DE #355) is

**DENIED.** (5) Defendants' Motion to Strike Portions of the Clarified Affidavit of Adrian Rangel (DE #358) is **DENIED.** (6) Plaintiff's Motion for Psychiatric Evaluation of Defendant Thomas Schmidt for Competency to Stand Trial (DE #360) is **DENIED AS MOOT.** (7) Plaintiff's Motion for Psychiatric Evaluation of Defendant Denise Schmidt for Competency to Stand Trial (DE #361) is **DENIED AS MOOT.** (8) Plaintiff's Motion for Psychiatric Evaluation of Witness Janell Schmidt Rangel for Competency to Stand Trial (DE #372) is **DENIED AS MOOT.** (9) Plaintiff's Motion requesting individuals be investigated for criminal conspiracy (DE #374) is **DENIED.** (10) Plaintiff's Motion for Appointment of Special Prosecutor (DE #383) is **DENIED.** (11) Plaintiff's Motion to Strike DE 381 (DE #384) is **DENIED AS MOOT.** (12) Plaintiff's Motion to Strike DE 381 (#385) is **DENIED AS MOOT.** (13) Plaintiff's Motion for Contempt of Court (DE #387) is **DENIED.** (14) Plaintiff's Motion for Appointment of Special Prosecutor (DE #388) is **DENIED.** Finally, the Clerk is **ORDERED** to **CLOSE** this case.


BACKGROUND

Pro se Plaintiff, Adrian Garcia Rangel, filed his complaint against multiple defendants[1], including Thomas Schmidt, Denise

_____

[1]Defendants, Steven Emery and the Indiana Central District of the Wesleyan Church were dismissed pursuant to a stipulation of partial dismissal (DE #142). Pursuant to earlier motions to

Schmidt, and the Northern Michigan District of the Wesleyan Church, on March 23, 2009. Although the complaint is not set forth in standard paragraph fashion, it seems to set forth allegations of fraud, intentional infliction of emotional distress, defamation, libel, slander, and other undefined acts of negligence. Rangel appears to claim that the named defendants should all be liable for their joint failure to tell and/or warn him that Janell (whom he married on September 25, 2005), was dependent on behavior controlling medication and was violent prior to the marriage ceremony, and that they failed to assist him after the ceremony as well. (Compl., pp. 1-2.) Rangel argues the deliberate failure to warn him of Janell's medication and violent behavior by Defendants in their individual and official capacities constitute fraud, intentional infliction of emotional distress, libel, defamation, slander, and malign. (*Id.*, p. 2.) Additionally, Rangel adds other allegations against Thomas Schmidt of defamation, libel, slander, and maligning, which appear to be related to the conduct of Mr. Schmidt and Janell in their efforts to gain custody of Rangel and Janell's daughters (Lu.R. and Le.R.), and their interactions with the Indiana and Michigan Department of Child Services. (*Id.*, p.

dismiss, Defendants, Indiana Wesleyan University, Schuyler Avenue Wesleyan Church, Joseph Park, Nancy Park, and Evergreen Wesleyan Church were all dismissed from the case. Additionally, the Court granted a motion for summary judgment in favor of Defendant, The Wesleyan Church Corporation, on September 27, 2011 (DE #389). Therefore, the Defendants who filed the instant Motion for Summary Judgment are the only remaining defendants in this case.

2.)

Defendants, Thomas Schmidt, Denise Schmidt, and The Northern Michigan District of the Wesleyan Church (hereinafter "Defendants"), filed the instant motion for summary judgment on March 18, 2011, arguing there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.[2] Plaintiff filed a response on April 1, 2011, and a reply was filed on April 15, 2011. Therefore, this motion is fully briefed and ripe for adjudication. Both parties also filed a number of motions associated to the instant motion for summary judgment, and those associated motions will also be addressed in this opinion.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record

---

[2]Because Plaintiff is pro se, Defendants provided him with the notice of consequences of failing to properly respond to a summary judgment motion pursuant to *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). (*See* DE #334.)

must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but must set forth specific facts showing that there is a genuine issue for trial.  *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate,

7

by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

It is noteworthy that Rangel is a pro se plaintiff. However, his pro se status does not relieve him from complying with the procedural rules associated with summary judgment. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (requiring pro se plaintiff to strictly comply with Northern District of Illinois Local Rule 56.1); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (explaining that pro se litigants must still comply with procedural rules).

Associated Motions

Defendants filed a motion to strike portions of Rangel's affidavit (DE #345), arguing that paragraphs 21-33 and 39-41 of Plaintiff's Affidavit (DE #340-1) contain either legal conclusions,

legal argument, conjecture, opinions, and/or speculation. In response, Plaintiff "request[ed] that all his miscommunicated paragraphs in the previous Affidavit and highlighted by the Defendants in their [motion to strike] be dismissed as harmless error as Plaintiff is pro se and not a trained attorney or expert in legalese." (DE # 351, p. 1.) As such, the motion to strike (DE #345) is **GRANTED** and the Clerk is **ORDERED** to strike paragraphs 21-33 and 39-41 from Plaintiff's Affidavit (DE #340-1).

Plaintiff then submitted what he refers to as a "Clarified Affidavit." (DE #351, pp. 4-8.) Defendants filed another motion to strike (DE #358), this time arguing that paragraphs 40, and 44-46 should be stricken from the Clarified Affidavit because they contain either self-serving statements, legal conclusions, legal argument, opinion, and/or speculation that fall outside Rangel's personal knowledge. (DE #358, pp. 1-2.) It is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See, e.g.*, *S.E.C. v. KPMG LLP*, 412 F.Supp.2d 349, 392 (S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL

2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004). Motions to strike are heavily disfavored, and usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). This Court can give Rangel's Clarified Affidavit the credit to which it is due, without the need to employ a motion to strike. The Court is able to sift through the evidence and to consider each piece under the applicable federal rules, thus there is no need to strike certain paragraphs from Rangel's Clarified Affidavit. Accordingly, the Court **DENIES** the motion to strike Rangel's Clarified Affidavit (DE #358) as unnecessary.

Plaintiff has also moved to strike Defendants' Exhibit B of DE #349. (DE #355.) Defendants attached this letter to their reply in support of summary judgment. It is a letter which Rangel filed on January 2, 2008, with the Tippecanoe County Court, in a previous proceeding. Rangel argues, without citing to any authority or case law, that the letter should be stricken because it was "written by the Plaintiff while in a state of duress at the Tippecanoe County Jail and because it was written before Plaintiff was afforded the opportunity to seek the advice of counsel." (DE #355.) In the letter, Rangel writes that Janell told him in September of 2005,

when they got married, that "she was on paxil, aderrol [sic.]/the behaviour [sic.] modification drugs." (DE #349, Ex. B.) This evidence directly contradicts Rangel's current assertion that he did not know until June or July of 2008 that Janell was taking such drugs. (DE #340, p. 22.) As such, this Court deems it relevant evidence, and because Rangel has provided no legitimate basis to exclude it, the motion to strike Exhibit B of DE #349 is **DENIED**.

Defendants filed an objection to the form of Plaintiff's response, complaining, among other things, that Rangel's response is improper because it is 53 pages in length. It is true that L.R. 7.1 provides a maximum of 25 pages in length. Rangel filed a belated motion for permission to exceed the page limit (DE #352), and in the best interests of justice, this Court hereby **GRANTS** the motion to file an oversized brief.

Plaintiff also filed motions for psychiatric evaluation of Defendants, Thomas Schmidt, Denise Schmidt, and witness, Janell Schmidt Rangel, for competency to stand trial. (DE ##360, 361, 372.) Because summary judgment is warranted in this case (as fully detailed below), trial is not reached, and these motions are **DENIED AS MOOT.**

Plaintiff filed a motion requesting that Defendants, Thomas Schmidt, Denise Schmidt, witness Janell Schmidt Rangel, Candace Baumgartner, and James H. McCormick be investigated for criminal conspiracy to violate civil rights, perjury, and suborning perjury

(DE #374).  This motion lacks supporting evidence, and does not cite case law or any authority showing that this Court has the ability to order an investigation for alleged criminal acts.  This motion is **DENIED**.  Similarly, Plaintiff's two motions for appointment of a special prosecutor (DE ##383, 388) are also **DENIED**.  Plaintiff has failed to show the Court that it has the authority to appoint a special prosecutor in this case.

Rangel also filed a Motion to Strike DE #381 (DE #384), arguing that opposing counsel is not licensed to practice law in the state of Michigan, and cannot represent Janell Schmidt Rangel, who is not a party in this case.  This Court has already denied the underlying motion for psychiatric evaluation of Janell Schmidt as moot; therefore, this motion is also **DENIED AS MOOT**.  Similarly, Plaintiff's second Motion to Strike DE #381 (DE #385) because opposing counsel has not filed an appearance on behalf of Janell Schmidt Rangel is also **DENIED AS MOOT**.

Finally, Plaintiff filed a Motion for Contempt of Court against Defendants (DE #387), arguing Defendants submitted "extraneous records of other cases they then proceed to mount a delusional defense." (DE #387, p.1.)  This Court has reviewed the documents cited in the motion, and disagrees with Rangel's conclusion that Defendants purposefully misled the Court.  The motion for contempt is **DENIED**.

Motion For Summary Judgment

### Undisputed Findings of Fact

Under the subtitle "Statement of Material Facts," Defendants set forth facts they propose are undisputed, with each fact supported by a citation to exhibits in the record. (DE #332, pp. 1-5.) However, no section of Plaintiff's response memorandum (DE #340) is designated as a statement of disputed facts. Local Rule 56.1 provides that a party opposing summary judgment must file a response brief and "any materials that the party contends raise a genuine dispute." L.R. 56.1(b)(1)(B). Additionally, the response brief or its appendix must specifically "include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." L.R. 56.1(b)(2). Finally, this Court's own Guidelines for Briefing Summary Judgment Motions provide that the opposing party's statement of genuine issues should be in the form of numbered paragraphs, each corresponding to the paragraph of the moving party's statement. (Court Guidelines.) "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the 'Statement of Genuine Issues' of the opposing party." *Id.*

Rangel did not comply with the rules. Rather, he "designate[d]" approximately 25 documents in support of his response. (DE #339.) His response does not directly address the

statement of material facts proposed by Defendants, nor does it identify material facts that Plaintiff contends are genuinely disputed as to necessitate trial. Because Plaintiff has not properly disputed any of the facts identified by Defendants in their statement of material facts, and has not set forth any additional facts or evidence (aside from the documents he designated and attached), the Court must take the facts in Defendants' statement as admitted. L.R. 56.1.

Adrian Rangel and Janell Schmidt were married on September 24, 2005, at the Schuyler Avenue Wesleyan Church. Revered Thomas Schmidt officiated at the ceremony. (T. Schmidt Aff., ¶¶ 6, 17, 18.) Schmidt was the Schuyler Avenue Wesleyan Church Pastor from August 1989 – August 2005. (*Id.*, ¶ 6.) During the summer of 2005, Schmidt accepted a job as the District Superintendent of the North Michigan District of the Wesleyan Church. (*Id.*, ¶ 9.)

Thomas Schmidt and his wife, Denise, are the adoptive parents of Janell Schmidt. (T. Schmidt Aff., ¶¶ 4, 5; D. Schmidt Aff., ¶ 4.) They adopted Janell when she was five months old. (T. Schmidt Aff., ¶ 4; D. Schmidt Aff., ¶ 4.) Thomas and Denise Schmidt raised Janell, and any knowledge they had concerning Janell's medical history was obtained by them in the parental relationship, not part of Mr. Schmidt's duties as an employee or representative of the Schuyler Avenue Wesleyan Church or the Northern Michigan District of the Wesleyan Church. (T. Schmidt Aff., ¶ 5; D. Schmidt Aff., ¶

14

5.)

In June 2005, Rangel and Janell began dating. (T. Schmidt Aff., ¶ 8; D. Schmidt Aff., ¶ 6.) Rangel and Janell got engaged during the summer of 2005, and planned to marry at the Schuyler Avenue Wesleyan Church. (T. Schmidt Aff., ¶ 10; D. Schmidt Aff., ¶ 7.) Part of Mr. Schmidt's responsibility as Pastor of the Schuyler Avenue Wesleyan Church was to provide premarital counseling. (T. Schmidt Aff., ¶ 7.) Before marrying, Rangel and Janell did participate in the premarital/pastoral counseling for the purpose of getting married at the Schuyler Avenue Wesleyan Church, provided by Thomas Schmidt. (*Id.*, ¶ 12.) Rangel and Janell met with Thomas Schmidt twice for the premarital counseling. (*Id.*, ¶ 15.) The counseling was similar to the premarital counseling Mr. Schmidt provided to any other couple wishing to marry at the Schuyler Avenue Wesleyan Church. (*Id.*, ¶ 16.) Mr. Schmidt did not provide any special counseling to Rangel and Janell. (*Id.*, ¶ 13.) The purpose of the counseling was for marriage preparation and to emphasize communication, commitment, and to prepare for the marriage. (*Id.*, ¶ 14.) It also provided teachings of the church's doctrine. *Id.*

On July 12, 2006, Le., Rangel and Janell's daughter, was born. (T. Schmidt Aff., ¶ 19; D. Schmidt Aff., ¶ 9.) Child Protective Services began an investigation in November 2006, and concluded that Le. was not a child in need of protective services. (T.

Schmidt Aff., ¶¶ 20-21.)  In February 2007, a second investigation was performed by Child Protective Services due to potential health concerns about Le. Rangel.  (*Id.*, ¶ 22.)  Le. was removed from Rangel and Janell's home, and placed in the custody of the State. (*Id.*, ¶ 23.)  Mr. Schmidt submitted a statement to the Indiana Department of Child Services dated April 2, 2007, stating he did not believe Le. had been mistreated or neglected while in the care of her parents, Adrian and Janell Rangel.  (T. Schmidt Aff., ¶ 26; Statement dated April 2, 2007, Defs.' Ex. A-2.)

The Michigan Department of Human Services performed an Interstate Home study regarding the placement of Le. Rangel in the home of Thomas and Denise Schmidt, Thomas Schmidt was interviewed, and ultimately, the Court awarded custody of Le. to Thomas and Denise Schmidt.  (T. Schmidt Aff., ¶¶ 27-28.)  On December 6, 2007, Thomas and Denise Schmidt filed with the Court under Cause No. 79D03-0712-GU-28, their Petition for the Appointment of Co-Guardians of the Person Over Minor Child.  (Defs.' Ex. C.)  Also filed was Thomas and Denise Schmidt's Acceptance and Oath of Guardian Appointed Over Person of Minor, and the Biological Mother's and Biological Father's Consent to the Appointment of Co-Guardians Over the Person of Le. Rangel and Waiver of Notice of Hearing.  (Defs.' Exs. D, E, F, and G.)  On December 7, 2007, the Court ordered the appointment of co-guardians, Thomas and Denise Schmidt, over Le. Rangel.  (T. Schmidt Aff., ¶ 28; D. Schmidt Aff.,

¶ 10; Defs.' Ex. A-4.) On December 11, 2007, by motion to dismiss filed on behalf of the Tippecanoe County Department of Child Services, the CHINS case was dismissed. (Defs.' Ex. H.)

On December 30, 2007, an alleged physical altercation occurred between Rangel and Janell, in which Janell was injured and hospitalized. (T. Schmidt Aff., ¶ 30; D. Schmidt Aff., ¶ 11.) Rangel was arrested and charged with Domestic Battery. (T. Schmidt Aff., ¶ 31; D. Schmidt Aff., ¶ 12.) Shortly thereafter, Janell moved to Michigan to live with her parents, Thomas and Denise Schmidt. (T. Schmidt Aff., ¶ 32; D. Schmidt Aff., ¶ 13.) Lu. Rangel was born to Janell on September 22, 2008, and resides with her mother, Janell, at the house of Thomas and Denise Schmidt. (T. Schmidt Aff., ¶ 33; D. Schmidt Aff., ¶¶ 14-15.) Denise Schmidt has been ordered by the Honorable Judge Graydon Dimkoff, Family Court Judge, in the Circuit Court of Newaygo, Michigan, to serve as the legal guardian of Lu. Rangel. (T. Schmidt Aff., ¶ 34; D. Schmidt Aff., ¶ 16.)

A hearing was conducted by Judge Dimkoff on March 22, 2010, on Rangel's Motion to Terminate a Personal Protection Order, and the hearing was attended by Rangel, Janell, and Thomas and Denise Schmidt. (T. Schmidt Aff., ¶¶ 36-37; D. Schmidt Aff., ¶¶ 18-20; Defs.' Ex. A-6.) At the hearing, the Judge began discussing issues of adoption pertaining to the children, Le. and Lu. (T. Schmidt Aff., ¶ 36; D. Schmidt Aff., ¶ 21; Defs.' Ex. A-6.) The Judge

asked Rangel if he would consent to the adoption of the children by the grandparents, and Rangel agreed.  (T. Schmidt Aff., ¶ 39; D. Schmidt Aff., ¶ 22; Defs.' Ex. A-6.)

Prior Procedural History

Before this lawsuit, Rangel was involved in other legal proceedings.  A CHINS proceeding began by the Tippecanoe County Department of Child Services, cause no. 79A02-0712-JV-1125, and the lower court's decisions were appealed to the Indiana Court of Appeals.  (*See* Def.'s Ex. I, Mem. Decision of the Indiana Court of Appeals regarding CHINS.)  As part of the placement of the child, the Court noted that the lower court tried to facilitate the placement of the child with her maternal grandparents. (Defs.' Ex. I, p. 6.)  Also, the lower court ordered the Department of Child Services to begin the Interstate Compact with the State of Michigan for possible placement of the child with the maternal grandparents. (*Id.*, p. 5.)  The Court ultimately found the child qualified as a child in need of services.  (*Id.*, p. 10.)  The CHINS proceeding was eventually dismissed upon Thomas and Denise Schmidt being ordered to serve as guardians for the minor child.  (Defs.' Ex. A-4, A-5.)

Afer the removal of Le. to custody of the State, and while the above referenced CHINS proceeding was still pending, Rangel and Janell filed a federal complaint on March 12, 2007, cause no. 4:07-CV 0020 AS ( Defs.' Ex. J), naming as defendants a caseworker, an

office manager, a judge, a nurse, a police officer, the City of Lafayette, and the Indiana Department of Child Services. Rangel and Janell sought $1,000,000 in compensatory damages and $2,000,000 in punitive damages. (Defs.' Ex. J.) In that case, Rangel alleged the following:

> Janell and Adrian had many problems with Janell's impulsive behavior. Adrian did have to call the police a few times to get her under control. This was only as a last resort and because Adrian was confused as to the cause of Janell's behavior. Janell's parents and friends left it up to Janell for the most part to disclose any mental impairment problems such as ADHD to Adrian. Which she promptly hid for fear of yet another failed relationship attempt.

(Defs.' Ex. J, p. 7.) In a memorandum opinion and order dated April 9, 2009, the Court dismissed all claims against the defendants. (*See Rangel v. Reynolds*, 607 F.Supp.2d 911 (N.D. Ind. 2009), Defs.' Ex. K.)

Rangel filed a pro se Petition for Dissolution of Marriage on January 25, 2008, cause number 79C01-0801-DR-00013. (Defs.' Ex. L.) On November 25, 2008, Rangel failed to appear at a final hearing, and the divorce was finalized. (Defs.' Ex. L, p. 3.) Rangel filed an appeal alleging that his due process and equal protection rights were violated. (*Id.*, p. 2.) The Court found the following facts as relevant and part of the record:

> Adrian and Janell married on September 24, 2005. During the marriage, two children were born, Le.R., born on July 12, 2006, and Lu.R., who was born on September 22, 2008. In 2007, as a result of allegations that Le.R. was a child in need of

services, Le.R. was removed from Adrian and Janell's care and placed in the custody of Janell's parents, Thomas and Denise Schmidt, who were appointed her guardians on December 7, 2007.

On December 30, 2007, Adrian and Janell got into an argument. At one point, Adrian grabbed Janell, threw her to the floor, and punched her in the head and face multiple times. The police were notified of the incident and arrested Adrian for domestic battery. As a result of her injuries, Janell was hospitalized. After being released from the hospital, Janell moved out of the marital residence and into her parents' home in Michigan.

(Defs.' Ex. L, pp. 2-3.) The Indiana Court of Appeals affirmed the lower court's decision about the dissolution of the marriage. (Defs.' Ex. L., p. 13.)

The Court notes that Rangel is estopped from challenging the issues and facts previously litigated, which are also present in this lawsuit. It is well established that in Indiana, collateral estoppel bars subsequent litigation of a fact or issue which was necessarily adjudicated in a former lawsuit, when the same fact or issue is presented in a subsequent lawsuit. *Bartle v. HealthQuest Realty VII*, 768 N.E.2d 912, 917-18 (Ind. Ct. App. 2002) (noting collateral estoppel "tends to prevent unnecessary relitigation of issues and promotes consistent trial court judgments."); *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind. 1998) ("[c]ollateral estoppel or issue preclusion bars subsequent litigation of an issue necessarily adjudicated in a former suit if the same issue is presented in the subsequent suit."). In that situation, the former adjudication is conclusive in the subsequent action, even if the

two actions involve difference claims. *Sullivan v. American Casualty Co. of Reading, Pa.*, 605 N.E.2d 134, 137 (Ind. 1992).

### Plaintiff's Negligence Claims Are Barred By The Statute of <u>Limitations</u>

As this Court has previously found in this lawsuit, Indiana Code 34-11-2-4 provides that an action for injury to person or character must be commenced within two years after the cause of action accrues. (DE #389, pp. 19-20.) Defendants argue that this statute of limitations applies to Rangel's claims for negligence, specifically, his claims for failure to warn, negligent supervision, intentional infliction of emotional distress, as well as defamation, libel, slander, maligning stemming from the alleged failure to warn, and for failure to assist after the wedding. (DE #332, p. 13.) Rangel does not dispute that the statute of limitation applies. Rather, he argues that the cause of action did not accrue until he got "hard evidence concerning Janell [sic.] violence controlling medication needs" which he contends, was not until his domestic battery attorney subpoenaed Janell's medical records in the Spring of 2008. (DE #340, p. 22.) Rangel claims he did not have access to the records until approximately June or July, 2008. *Id.*

"A statute of limitation does not begin running until a cause of action accrues." *Hildebrand v. Hildebrand*, 736 F. Supp. 1512,

1517 (S. D. Ind. 1990). In doing this analysis, "it is the time that damage is or could be ascertained, not the time the wrongful act transpired, that controls the analysis." *Id.* Indiana does recognize the "discovery rule" in limited circumstances, which is that the statute of limitations commences when a plaintiff "knew or should have discovered that [he] (1) suffered an injury or impingement, and (2) that the injury or impingement was caused by the product or act of another." *Id.* at 1518 (quoting *Barnes v. A.H. Robins Co., Inc.*, 476 H.E.2d 84, 86 (Ind. 1985).)

Rangel seems to assert that the discovery rule applies. In his "clarified affidavit," he attests that at no time prior to the marriage ceremony, or during the marriage ceremony, or during the marriage, did Janell Schmidt or Thomas Schmidt or Denise Schmidt or the Wesleyan Church Corporation disclose to Rangel her "violence sedating medication needs." (DE #340-1, ¶¶ 21-32.) And, that he "first gained hard evidence of a doctor's order putting Janell Schmidt on Paxil as a result of discovery [his] attorney obtained during [his] domestic abuse trial in the summer of 2008." (*Id.* ¶ 33.) Rangel's assertions do not create a genuine issue of material fact that necessitate trial. The issue for such a claim is not when Rangel learned that there was a doctor's prescription putting Janell on Paxil. Rather, the statute of limitations begins to run "when a claimant knows or, in the exercise of ordinary diligence, should have known of the injury." *Rieth-Riley Constr.*

*Co., Inc. v. Gibson*, 923 N.E.2d 472, 475 (Ind. Ct. App. 2010) (citing *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008)). "The determination of when a cause of action accrues is generally a question of law." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009).

There is ample evidence in the record that Rangel knew of Janell's behavioral difficulties and violent tendencies well before March 23, 2007 (or two years prior to filing the complaint). On January 2, 2008 (before the alleged subpoena in the Spring of 2008), Rangel himself wrote a letter to the judge of the Tippecanoe Superior Court of Indiana stating, "[i]n Sept. 05 we got married. At that point she told me she was on aderrol/paxil the behaviour [sic] modification drugs. . . . Throughout my wife's life she has taken drugs for her ADHD and for behaviour [sic] modification i.e. prozac, lithium, paxal, aderrol, to name a few. . . . I believe Jan might be a psychopath." (DE #349-2.) Additionally, in another case filed in the Northern District of Indiana on Mach 12, 2007 (Cause No. 4:07-CV-0020), Plaintiff alleged that:

> Janell and Adrian had many problems with Janell's impulsive behavior. Adrian did have to call the police a few times to get her under control. This was only as a last resort and because Adrian was confused as to the cause of Janell's behavior. Janell's parents and friends left it up to Janell for the most part to disclose any mental impairment problems such as ADHD to Adrian.

(Defs.' Ex. J, p. 7.) Thus, it is obvious that Rangel was alleging more than 2 years prior to the filing of the complaint in this case

(on March 23, 2009), that he had been having problems with Janell's behavior, that she had disclosed to him information about her health and medication, and that he knew he was not warned or told by her family and friends of Janell's medical issues.  The Court finds that Rangel knew that Janell had behavioral issues and was taking medication like Paxil well before two years prior to the filing of this action on March 23, 2009.  Consequently, any claim against Defendants for negligence, is barred under Indiana's two year statute of limitations.  I.C. 34-11-2-4.

Plaintiff's argument that the statute of limitations is tolled because Defendants fraudulently concealed information during his marriage (specifically, that she was taking certain medications), is also unavailing.  "Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by deception or a violation of a duty, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 690 (Ind. Ct. App. 2006) (citations omitted).  If this occurs, "equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay." *Id.*  Importantly, this exception "does not establish a new date for the commencement of the statute of limitations, but instead creates an equitable exception. . . a plaintiff must exercise due diligence in commencing his action

after the equitable ground ceases to operate as a valid basis for causing a delay." *Id.* at 690-91. In other words, a plaintiff still has to "institute an action within a reasonable time after he discovers information which would lead to discovery of the cause of action." *Id.* at 691.

Fraudulent concealment generally applies if there is an active and intentional concealment, but where a fiduciary relationship imposes a duty to disclose, that may be enough to toll the statute. *See Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). There is no allegation in the complaint of active and intentional concealment by Defendants. Although Rangel argues in his response that Thomas and Denise Schmidt "deliberately concealed" the fact that Janell took violent sedating medication (DE #340, p. 5), Rangel only supports this assertion with a citation to his own self-serving affidavit and what he refers to as the "Karen Kover Report." Rangel cannot rely on "self-serving declarations based on nothing more than his own speculation." *Healy v. City of Chicago*, No. 00 C 6030, 2004 WL 1630578, at *6 (N.D. Ill. July 20, 2004); *see also Sybron Transition Corp. v. Security Ins. Co. Of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1007) ("[a] party must present more than mere speculation or conjecture to defeat a summary judgment motion.").

The Karen Kover Report appears to be handwritten notes and a letter from a social worker that met with Janell from 2001-2003.

(DE #340-6.)  It is unauthenticated, but even assuming, *arugendo*, that it would be admissible, there is nothing in the social worker's notes that establish that Thomas and Denise Schmidt actively and intentionally concealed information about Janell from Rangel.  In fact, the document only covers the time period of 2001-2003, and Rangel did not start dating Janell until 2005.  Moreover, Rangel has set forth no argument or citations to case law, to establish a fiduciary duty during premarital counseling for Reverend Schmidt to disclose medical histories or medications.  It is not the Court's responsibility to research and construct the parties' arguments. *Donnelly v. Chicago Park Dist.*, 417 F.Supp.2d 992, 994 (N.D. Ill. 2006) (citing *United States v. McClee*, 436 F.3d 751 (7th Cir. 2006)).  Rangel does contend that because Mr. Schmidt's own daughter was getting married, he assumed a duty to disclose medical information as to his adoptive daughter.  (DE #340, p. 19-21.)  However, Janell was 20 years old when she married Rangel, 2 years over the legal age in Indiana, which is 18.  I.C. 31-11-1-4.  Therefore, because she was of legal age to marry, the Court is unaware of any legal obligation her adoptive parents would have to disclose information to Rangel.  Additionally, the Court is unaware of any legal duty Thomas Schmidt would have as a Pastor to warn Rangel about his future spouse's medication needs or behavioral issues.  As such, Rangel has failed to show that Defendants owed any duty to him.  Finally, as mentioned before,

there is evidence in the record that Rangel did have knowledge of Janell's behavior and medication needs well before two years prior to the filing of the complaint was filed. As such, Rangel's claim that concealment tolls the statute of limitations fails, and his claims are time barred.

> Summary Judgment Is Also Warranted For The Claim For Failure to Offer Substantial Assistance Because It Fails As a Matter of Law

Even assuming, *arguendo*, that Rangel's claim for failure to offer substantial assistance was not time barred, it still fails as a matter of law. It is axiomatic that unless there is a duty owed by one person to another, there is no negligence. *Bush v. Northern Indiana Pub. Serv. Co.*, 685 N.E.2d 174, 177 (Ind. Ct. App. 1997) ("Unless there is a duty owed by one person to another, there can be no negligence."). The Restatement (Second) of Torts, Section 314A provides the special relations giving rise to a duty to aid or protect: (1) common carrier to passengers; (2) innkeeper to guests; (3) possessor of land to members of the public; and (4) one who takes custody of another. The Commentary to the Restatement also extends a duty to aid and protect for employers to protect its employees. Here, Rangel has no relationship with the Defendants under the Restatement, and he points to no special relationship or any authority in support of the argument that a duty existed to assist him. This Court is unaware of any case law establishing a

special duty or relationship between a Pastor giving premarital counseling to a person or congregant of the church.

> Additionally, A Claim For Negligent Supervision Against The Northern Michigan District of the Wesleyan Church Fails As a <u>Matter of Law</u>

Even assuming, *arguendo*, that this claim was not time barred, summary judgment is still appropriate. Rangel states a claim in his complaint for "deliberately failing to warn Adrian Garcia Rangel of Janells medication needs and associated wide ranging violent behaviour [sic.] the defendants in individual and official capacities (the institutional defendants in failing to supervise)" committed negligent acts. (Compl., p. 2.) With regard to the negligent supervision claim, in Indiana, a claim for negligent supervision may impose liability on an employer when an employee steps beyond the recognized scope of this employment to commit a tortious injury upon a third party. *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009). In the summer of 2005, Thomas Schmidt was awarded the District Superintendent of the Northern Michigan District of the Wesleyan Church. Rangel does not dispute that the premarital/pastoral counseling provided by Schmidt to Rangel and Janell was in his capacity as pastor of the Schuyler Avenue Wesleyan Church. Neither the marriage nor the counseling was performed by Thomas Schmidt in his capacity as the District Superintendent of the Northern Michigan District of the Wesleyan

Church; therefore, any failure to supervise claim against Defendant, Northern Michigan District of the Wesleyan Church, must fail.

<u>Summary Judgment Is Warranted On The Claim of Fraud</u>

Rangel alleges that by "deliberately failing to warn Adrian Garcia Rangel of Janells medication needs and associated wide ranging violent behaviour [sic.] the defendants in individual and official capacities (the institutional defendants in failing to supervise)" committed fraud. (Compl., p. 2.) In Indiana, the requisite elements for fraud are: (1) a material misrepresentation of past or existing facts, (2) made with knowledge or reckless ignorance of falsity, and (3) which causes the plaintiff to rely upon the misrepresentation to the plaintiff's detriment. *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004). As noted by Defendants, Rangel has not alleged any material misrepresentations; but rather, only alleges a failure to warn. As such, Defendants go on to argue that Rangel has also failed to show constructive fraud. Constructive fraud also requires, *inter alia*, the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists. *American Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010) (citation omitted). Rangel does not allege any material misrepresentation made by Defendants, nor has he shown that they

29

owed a duty to him stemming from their relationship. *See, e.g.,*
*Morfin v. Estate of Martinez*, 831 N.E.2d 791, 802 (Ind. Ct. App.
2005) (finding complaining party has burden of proving the
existence of a duty owed to it by the other party stemming from
their relationship). Consequently, summary judgment is proper on
the fraud claim.

## Plaintiff's Libel and Slander Claims Are Also Unsuccessful

Rangel vaguely alleges that Defendants defamed, libeled, or
slandered Rangel. (Compl., p. 2.) It seems that these allegations
stem from communications during the custody battle of Rangel's
children, but Rangel does not specify what exact statements Thomas
Schmidt made to the State agencies that allegedly constitute
defamation, libel, or slander. Any statements Thomas Schmidt made
relating to the litigated CHINS proceeding to the Indiana
Department of Child Services and the Michigan Department of Child
Services, would have been protected by an absolute privilege. *See,*
*e.g., Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998)
(finding absolute privilege is afforded to statements made in the
course of a judicial proceeding if they are relevant and pertinent
to the litigation). Whether a particular communication is relevant
and pertinent to the litigation is a legal determination for the
court to make. *Id.* at 494. Rangel does not pinpoint any
statements, and he does not provide the Court with any statements

that were not made in the course of a judicial proceeding, or were not pertinent to the litigation at hand. It is well established that when a party fails to respond to an issue raised in a summary judgment motion, the issue is deemed abandoned and waived. *See, e.g., Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating arguments not presented to the court in response to a summary judgment motion are waived). Therefore, the Court finds that the statements made by Thomas Schmidt in relation to the litigated CHINS proceeding and pertaining to the guardianship of Lu. are privileged. Alternatively, Rangel has also failed to designate any evidence to dispute whether a qualified privilege would protect any statements made by Thomas Schmidt to the Indiana Department of Child Services and the Michigan Department of Child Services. *See also Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992) (holding, in absence of factual dispute, the applicability of privilege is a question of law to be determined by the court). As such, the communications made during these proceedings are protected, and not subject to claims of defamation, libel, or slander.

Plaintiff's Claims For Alienation of Affection Fail

Rangel claims that Janell's violence caused alienation of

affection with his daughters. Defendants point out that the tort of alienation of affection has been abolished in Indiana. *See Pennington v. Stewart*, 10 N.E.2d 619 (Ind. 1937). Rangel does not address his claim for alienation of affection whatsoever in his response, and therefore, has waived this claim. *See Palmer*, 327 F.3d at 597-98.


### Any Claim For Punitive Damages Fails As A Matter of Law

Finally, Rangel requests punitive damages in the complaint. However, punitive damages "seek to punish a mental state and not an error in judgment, and . . . Indiana does not recognize degrees of negligence . . punitive damages require clear and convincing evidence establishing a subjective mental state of obduracy." *Austin v. Disney Tire Co., Inc.*, 815 F.Supp. 285, 288 (S.D. Ind. 1993). The facts in the record before this Court do not support a claim for punitive damages.


**CONCLUSION**

For the aforementioned reasons, it is **HEREBY ORDERED**: (1) Defendants' Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church's Motion for Summary Judgment (DE #331) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants, Thomas

Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church. (2) Defendants' Thomas Schmidt, Denise Schmidt, and the Northern Michigan District of The Wesleyan Church's Motion to Strike Portions of the Affidavit of Adrian Garcia Rangel (DE #345) is **GRANTED** and the Clerk is **ORDERED** to Strike paragraphs 21-33 and 39-41 of Plaintiff's Affidavit (DE #340-1) submitted as part of his response in opposition to the motion for summary judgment. (3) Plaintiff's Motion for Permission to Exceed Page Limit for his response (DE #352) is **GRANTED**. (4) Plaintiff's Motion to Strike Exhibit B of DE 349 (DE #355) is **DENIED**. (5) Defendants' Motion to Strike Portions of the Clarified Affidavit of Adrian Rangel (DE #358) is **DENIED**. (6) Plaintiff's Motion for Psychiatric Evaluation of Defendant Thomas Schmidt for Competency to Stand Trial (DE #360) is **DENIED AS MOOT**. (7) Plaintiff's Motion for Psychiatric Evaluation of Defendant Denise Schmidt for Competency to Stand Trial (DE #361) is **DENIED AS MOOT**. (8) Plaintiff's Motion for Psychiatric Evaluation of Witness Janell Schmidt Rangel for Competency to Stand Trial (DE #372) is **DENIED AS MOOT**. (9) Plaintiff's Motion requesting individuals be investigated for criminal conspiracy (DE #374) is **DENIED**. (10) Plaintiff's Motion for Appointment of Special Prosecutor (DE #383) is **DENIED**. (11) Plaintiff's Motion to Strike DE 381 (DE #384) is **DENIED AS MOOT**. (12) Plaintiff's Motion to Strike DE 381 (#385) is

**DENIED AS MOOT**.  (13) Plaintiff's Motion for Contempt of Court (DE #387) is **DENIED**.  (14) Plaintiff's Motion for Appointment of Special Prosecutor (DE #388) is **DENIED**.  Finally, the Clerk is **ORDERED** to **CLOSE** this case.


DATED: November 16, 2011          /s/ RUDY LOZANO, Judge
                                  **United States District Court**